No. 24-30664

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

**JASON BROUSSARD,**
*Plaintiff - Appellant*

**Versus**

**EXXON MOBIL CORPORATION,**
*Defendant - Appellee*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

Civil Action No. 22-843-BAJ-RLB
Honorable Brian A. Jackson District Judge, presiding

_____

**BRIEF FOR EXXON MOBIL CORPORATION - APPELLEE**

_____

Scott D. Huffstetler (Bar Roll #28615)
scott.huffstetler@keanmiller.com
Erin Lutkewitte Kilgore (Bar Roll #31244)
erin.kilgore@keanmiller.com
KEAN MILLER LLP
400 Convention Street, Suite 700
Baton Rouge, Louisiana  70802
Telephone: (225) 387-0999

*Attorneys for Exxon Mobil Corporation*

## CERTIFICATE OF INTERESTED PERSONS

1) Case No. 24-30664, Jason Broussard v. Exxon Mobil Corporation, USDC Civil Action No. 3:22-cv-00843.

2) The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellee: |
| --- | --- |
| Exxon Mobil Corporation | Scott D. Huffstetler of Kean Miller LLP, Baton Rouge, LA |
| Exxon Mobil Corporation | Erin Kilgore of Kean Miller LLP, Baton Rouge, LA |
| Exxon Mobil Corporation | Mary Love of Kean Miller LLP, Baton Rouge, LA |

| Appellant: | Counsel for Appellant: |
| --- | --- |
| Jason Broussard | J. Andrew Murrell of Andrew Murrell Law Firm, Baton Rouge, LA |

| Other Interested Parties: | Contact: |
| --- | --- |
| Honorable Brian A. Jackson, United States District Judge | c/o USDC MDLA |
| Honorable Richard L. Bourgeois, Jr., United States Magistrate Judge | c/o USDC MDLA |

BY: */s/ Scott D. Huffstetler*
Scott D. Huffstetler (Bar Roll #28615)
scott.huffstetler@keanmiller.com
Erin Lutkewitte Kilgore (Bar Roll #31244)
erin.kilgore@keanmiller.com
KEAN MILLER LLP
400 Convention Street, Suite 700
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
*Attorneys for Exxon Mobil Corporation*

4917-5728-4366 v1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee respectfully submits that this appeal is not appropriate for oral argument. The facts and legal arguments are adequately presented in the briefs and record, the governing law is well established, and the Court's decisional process will not be significantly aided by oral argument in this appeal.

4917-5728-4366 v1

# <u>TABLE OF CONTENTS</u>

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS .................................................................................... iv

TABLE OF AUTHORITIES ............................................................................. vii

STATEMENT OF JURISDICTION ..................................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 2

INTRODUCTION ............................................................................................... 3

STATEMENT OF THE CASE ............................................................................. 5

   A. FACTUAL BACKGROUND .......................................................................... 5

     1. Broussard's general employment history with ExxonMobil ........................ 5

     2. Broussard's September 30, 2022 Petition for Wages Due ........................... 6

     3. The District Court properly dismissed Broussard's claim for additional pension benefits ........................................................................... 7

       a. ExxonMobil's Answer asserting failure to exhaust plan remedies, with Broussard's First Amended Complaint devoid of ERISA ................ 8

       b. Broussard never exhausted pension plan remedies ................................... 8

     4. The District Court properly dismissed Broussard's claim for additional shift differential pay ................................................................. 12

   B. PROCEDURAL HISTORY ......................................................................... 15

SUMMARY OF ARGUMENT ........................................................................... 16

ARGUMENT ..................................................................................................... 16

I.   ERISA Preempts Broussard's Pension-Related Breach of Contract Claim...16

   A.  Standard of Review .................................................................16

   B.  ERISA Preempts Breach of Contract Claims for Additional Pension
      Plan Benefits...........................................................................17

   C.  Even indulging Broussard's contract theory (entirely for the sake of
      argument), there was no guaranteed payout amount for Broussard to
      "accept." .................................................................................24

II.  Broussard Failed to Exhaust His Administrative/Plan Remedies .................26

   A.  Standard of Review .................................................................26

   B.  There is no basis to excuse Broussard's failure to exhaust plan
      remedies before filing suit........................................................27

III. Broussard Did Not Plead Any ERISA Claim....................................................31

   A.  Standard of Review .................................................................31

   B.  Broussard never pled any ERISA claim, and moreover, his failure to
      exhaust his administrative remedies would bar such a claim ....................31

IV. The District Court did Not Error in Not Recognizing Additional Claims
    Broussard Simply Never Pled .........................................................33

   A.  Standard of Review .................................................................33

   B.  Broussard did not plead any claim for waiting time penalties under
      ERISA or any other ERISA-based claims ..................................33

V.  There are No Triable Issues of Material Fact on Broussard's Shift
    Differential Claim......................................................................34

   A.  Standard of Review .................................................................34

   B.  Broussard Had No Legal Right to Shift Differential Before
      January 1, 2021......................................................................36

CONCLUSION ...............................................................................40

4917-5728-4366 v1

CERTIFICATE OF COMPLIANCE........................................................................41

CERTIFICATE OF SERVICE .................................................................................42

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ....................................................................17, 19

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................35

*Aucoin v. Regions Financial Corp.*,
    2014 WL 2527046 (E.D. La. June 4, 2014) .........................................21, 22, 23

*Batiste v. Lewis*,
    976 F.3d 493 (5th Cir. 2020) ...............................................................35

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................32

*Bennett v. McDermott Internat'l, Inc.*,
    855 Fed. Appx. 932 (5th Cir. 2021)...........................................................36, 38

*Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*,
    378 F.3d 669 (7th Cir. 2004) ....................................................................21

*Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*,
    215 F.3d 475 (5th Cir. 2000) ......................................................................27, 28

*Brown v. Wal-Mart Stores E., L.P.*,
    969 F.3d 571 (5th Cir. 2020) ....................................................................27

*Carroll v. Fort James Corp.*,
    470 F.3d 1171 (5th Cir. 2006) ....................................................................31, 33

*Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*,
    892 F.3d 167 (5th Cir. 2018) ...................................................................35

*Clayton v. ConocoPhillips Co.*,
    722 F.3d 279 (5th Cir. 2013) ....................................................................16

*Conley v. Gibson*,
  355 U.S. 41 (1957)..........................................................................32

*Cotillion v. United Refining Co.*,
  781 F.3d 47 (3d Cir. 2015) ............................................................26

*Denton v. First Nat'l Bank of Waco*,
  765 F.2d 1295 (5th Cir. 1985) ..................................................27, 28

*Egelhoff v. Egelhoff*,
  532 U.S. 141 (2001)........................................................................18

*Hager v. DBG Partners, Inc.*,
  903 F.3d 460 (5th Cir. 2018) ........................................................18

*Hamann v. Independence Blue Cross*,
  543 Fed. Appx. 355 (5th Cir. 2013)................................................22

*Hampton v. McDermott Internat'l, Inc.*,
  2019 WL 5617025 (W.D. La. Oct. 30, 2019)............................37, 38

*Harrow v. Prudential Ins. Co. of Am.*,
  279 F.3d 244 (3d Cir. 2002) ..........................................................26

*Hermann Hosp. v. MEBA Med. & Benefits Plan*,
  845 F.2d 1286 (5th Cir. 1988) ......................................................20

*Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*,
  535 F.3d 359 (5th Cir. 2008) ........................................................35

*Jones v. Gulf Coast Rest. Grp., Inc.*,
  8 F.4th 363 (5th Cir. 2021) ...........................................................35

*Kerek v. Crawford Electric Supply Co.*,
  2020 WL 4906050 (M.D. La. Aug. 20, 2020)............................37, 38

*Lone Star OB/GYN Assocs. v. Aetna Health Inc.*,
  579 F.3d 525 (5th Cir. 2009) .........................................................16

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)..................................................................17, 22

4917-5728-4366 v1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................ 35, 36

*McAteer v. Silverleaf Resorts, Inc.*,
514 F.3d 411 (5th Cir. 2008) ...................................................................... 19

*MedARC, LLC v. Scott & White Health Plan*,
2022 WL 3044569 (N.D. Tex. Aug. 1, 2022) .............................................. 17

*Montgomery v. Waitr Holdings Inc.*,
2019 WL 2233792 (E.D. La. May 23, 2019) ............................................... 36

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ..................................................................................... 18

*Musmeci v. Schwegmann Giant Super Markets, Inc.*,
332 F.3d 339 (5th Cir. 2003) ...................................................................... 21

*New York State Conference of Blue Cross & Blue Shield Plans v.*
*Travelers Ins. Co.*,
514 U.S. 645 (1995) ..................................................................................... 18

*Owens v. Circassia Pharms., Inc.*,
33 F.4th 814 (5th Cir. 2022) ....................................................................... 35

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) ....................................................................................... 17

*Powell v. AT&T Commc'ns, Inc.*,
938 F.2d 823 (7th Cir. 1991) ...................................................................... 26

*Renfroe v. Parker*,
974 F.3d 594 (5th Cir. 2020) ...................................................................... 35

*St. Luke's Episcopal Hosp. v. Louisiana Health & Serv. & Indem. Co.*,
2009 WL 47125 (S.D. Tex. Jan. 6, 2009) ..................................................... 20

*Stoll v. Goodnight Corp.*,
469 So.2d 1072 (La. Ct. App. 1985) ............................................................ 37

*Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*,
164 F.3d 952 (5th Cir. 1999) ................................................................... 19, 20

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*,
  15 F.4th 1136 (Fed. Cir. 2021) ...........................................................35

*Welsh v. Fort Bend Indep. Sch. Dist.*,
  941 F.3d 818 (5th Cir. 2019) ..............................................................27

*Whitworth v. Chiles Offshore Corp.*,
  1992 WL 245618 (E.D. La. Sept. 17, 1992)....................................37, 38

*Woods v. Tex. Aggregates, L.L.C.*,
  459 F.3d 600 (5th Cir. 2006) ..............................................................19

*Zhou v. Guardian Life Ins. Co. of Am.*,
  295 F.3d 677 (7th Cir. 2002) ..............................................................26

## Statutes

28 U.S.C. § 1332 .......................................................................................1

29 U.S.C. § 1132(a)(1)(B) ...........................................................17, 18, 22

29 U.S.C. § 1132(d)(1)...........................................................................21

29 U.S.C. § 1144(a) ...........................................................................6, 18

29 U.S.C. § 1291 .......................................................................................1

Employee Retirement Income Security Act (ERISA),
  29 U.S.C. § 1001, *et seq.* ...........................2, 3, 6, 8, 16-28, 31, 32, 33

ERISA section 502(a) ......................................................................11, 17

ERISA Section 514(a)............................................................................18

La. Civ. Code art. 3494 ..........................................................................38

Louisiana Wage Payment Act (LWPA),
  La. R.S. § 23:631, *et seq.* .....................3, 18, 20, 25, 31, 32, 34, 36-39

## Other Authorities

Fifth Circuit Rule 28.2.1 ......................................................................... ii

Fifth Circuit Rule 32.1 ............................................................................41

Federal Rule of Appellate Procedure 32(a)(5).........................................................41

Federal Rule of Appellate Procedure 32(a)(6).........................................................41

Federal Rule of Appellate Procedure 32(a)(7)(B) ...................................................41

Federal Rule of Appellate Procedure 32(f)..............................................................41

Federal Rules of Civil Procedure Rule 8 .................................................................32

4917-5728-4366 v1

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between the two parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

The district court entered a summary judgment on September 13, 2024.[1] Appellant filed a notice of appeal on October 15, 2024.[2] This Court has appellate jurisdiction pursuant to 29 U.S.C. § 1291 because this appeal is from a final judgment.

---

[1] ROA.382-95, Ruling and Order; ROA.396, Judgment.
[2] ROA.415-16, Notice of Appeal.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    Whether the district court properly ruled Broussard's breach of contract claim for additional pension benefits is preempted by ERISA.

II.    Whether the district court properly exercised its discretion in ruling Broussard had failed to exhaust his administrative remedies under the ExxonMobil pension plan.

III.    Whether the district court properly ruled Broussard never pled any claim under ERISA.

IV.    Whether the district court properly ruled Broussard could not raise in a summary judgment response brief any new, additional, unpled, claims under ERISA.

V.    Whether the district court properly ruled Broussard was not entitled to any additional shift differential compensation.

## **INTRODUCTION**

Plaintiff Jason Broussard was an Exxon Mobil Corporation ("ExxonMobil") employee until he resigned in February 2022. In this lawsuit, Broussard seeks the following pursuant to the Louisiana Wage Payment Act, La. R.S. § 23:631, *et seq.* ("LWPA"): (1) statutory penalties and attorney's fees for ExxonMobil's alleged failure to timely pay Broussard's vacation pay (which claim was fully resolved by the parties before ExxonMobil's motion for summary judgment); (2) wages, statutory penalties, and attorney's fees for ExxonMobil's alleged improper calculation of Broussard's pension benefit; and (3) wages, statutory penalties, and attorney's fees for ExxonMobil's alleged failure to pay a shift differential between 2015-2020. Given the parties' resolution of the claim related to vacation pay, ExxonMobil's motion for partial summary judgment that is the subject of this appeal sought dismissal of claims (2) and (3).

For Broussard's pension related claim, the district court properly granted summary judgment for ExxonMobil because Broussard's claim for additional pension benefits is preempted by the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Broussard never amended this suit to assert any ERISA claim. Moreover, Broussard failed to exhaust his administrative/plan remedies for any purported claim for pension benefits, as required by ERISA.

Accordingly, Broussard's claim for additional pension benefits fails, and the district court appropriately dismissed it.

For Broussard's shift differential claim, the district court properly granted summary judgment for ExxonMobil because Broussard cannot establish any legal entitlement to the $150/month shift differential payment between 2015-2020. The undisputed evidence shows ExxonMobil did not have a policy of paying employees in the same class as Broussard a shift differential payment between 2015-2020. There is no evidence such a policy was approved by the appropriate managers until 2021. Accordingly, Broussard has no claim for shift differential, and the district court appropriately dismissed this claim.

For these reasons, and reasons discussed more fully below, Broussard's pension-related and shift differential pay claims were properly summarily adjudicated in favor of ExxonMobil and dismissed.

## STATEMENT OF THE CASE

### A.     FACTUAL BACKGROUND

#### 1.     Broussard's general employment history with ExxonMobil.

ExxonMobil hired Broussard on January 24, 2000, with Broussard initially holding a Security Officer (Officer of Security Enforcement) position in Baton Rouge.[3] Broussard alleges he was promoted to a Security First Line Supervisor ("FLS") position in September 2015, and solely for purposes of this appeal, ExxonMobil accepts his allegation that his promotion occurred in September 2015.[4] Broussard worked in ExxonMobil's Baton Rouge chemical plant organization, providing security services to both a refinery and chemical plant, with the position within the Security, Safety, Health & Environmental ("SSHE") Department/Division.[5]

Effective on or about February 1, 2022, Broussard transferred to a LDAR (Leak Detection and Repair) Specialist position, at his request.[6] Approximately two weeks later, he tendered notice of his resignation.[7] Broussard's last day of

---

[3] ROA.127, Motion for Summary Judgment ("MSJ"), Ex. A, Broussard Depo., 37:1-2.

[4] ROA.77, Rec. Doc. 14, First Amended Complaint ("FAC"), ¶ 9; ROA.13, Rec. Doc. 1-1, Ex. A, Petition, ¶ 6.

[5] ROA.132, MSJ Ex. A, Broussard Depo., 45:5-23; ROA.177-79, MSJ Ex. C, Villalba Decl., ¶¶ 2-3.

[6] ROA.135-36, MSJ Ex. A, Broussard Depo., 55:20-56:7.

[7] ROA.172, MSJ Ex. A, Broussard Depo. Ex. 6; ROA.128, 129, 165-66, MSJ Ex. A, Broussard Depo., 38:9-11, 42:21-23, 99:25-100:9. After Broussard's supervisor raised some performance issues with Broussard that Broussard considered unfair, Broussard then notified his supervisor via email that he was resigning on February 16, 2022. ROA.172, MSJ Ex. A, Broussard Depo. Ex. 6.

employment with ExxonMobil was March 4, 2022, but solely for purposes of this appeal, ExxonMobil accepts his allegation that his last day of employment was February 28, 2022.[8]

## 2. **Broussard's September 30, 2022 Petition for Wages Due**.

On September 30, 2022, Broussard filed his claims against ExxonMobil in state court under state law, as a "Petition for Wages Due."[9] His claims can be broken down into three parts: (1) for alleged additional vacation payout at termination; (2) for alleged additional pension funds; and (3) for alleged additional "shift differential" payments of $150/month, which he contends he should have been paid before ExxonMobil even instituted such pay for his position, along with alleged waiting time penalties under the LWPA.[10] ExxonMobil removed the action to federal district court because, besides the diversity of citizenship subject matter jurisdiction ground for removal, Broussard's pension payment plan is subject to ERISA.[11] His claim related to the pension payment plan is preempted by federal law, as ERISA law supersedes all state law claims related to an ERISA-covered employee benefit plan. 29 U.S.C. § 1144(a).

---

[8] *See* ROA.77, Rec. Doc. 14, FAC, ¶ 12.
[9] ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition.
[10] ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition; ROA.75-79, Rec. Doc. 14, FAC.
[11] ROA.6-22, Rec. Doc. 1, Removal.

The parties subsequently resolved the vacation payment claim, and proceeded to summary judgment briefing on the claims related to pension benefits and shift differential pay.

**3.    The District Court properly dismissed Broussard's claim for additional pension benefits.**

With respect to his claim for additional pension funds, Broussard originally alleged that "[d]espite [his] separation date of March 4, 2022, in the first quarter of the year, EXXON refused to pay out his pension until after July 4, 2022. EXXON chose 3rd quarter interest rates which resulted in [Broussard] losing $60,448.73 in pension funds that would have been paid if EXXON processed his pension payout on the date of separation."[12] By a "First Amended Complaint for Wages Due" filed on November 14, 2023, Broussard alleged a single claim for "Wages Due."[13] In support of his claim for alleged additional pension funds, Broussard asserted virtually the same facts as alleged in his original petition, except he changed his alleged separation date from March 4, 2022 to February 28, 2022, alleging: "Despite [Broussard's] separation date of February 28, 2022, which was in the first quarter of the year, EXXON refused to pay out his pension until after July 4, 2022, which was in the third quarter of the year. [¶] In doing so, EXXON chose third quarter interest

---

[12] ROA.13, Rec. Doc. 1-1, Ex. A, Petition, ¶ 8.
[13] ROA.75-79, Rec. Doc. 14, FAC, p. 2.

rates, which cost [Plaintiff] $60,448.73 in pension funds that would have been paid if EXXON processed his pension payout on the date of separation."[14]

### a.    ExxonMobil's Answer asserting failure to exhaust plan remedies, with Broussard's First Amended Complaint devoid of ERISA.

In its Answers, ExxonMobil asserted as defenses that Broussard's pension-related claim is preempted by ERISA and that such claim is barred by his failure to exhaust his administrative/plan remedies.[15] Broussard never amended his Complaint in this action to assert any claims explicitly stated under ERISA.[16] While he filed a First Amended Complaint to adjust the date of his separation from ExxonMobil (as mentioned above), he did not reference ERISA within his amended complaint, much less did he attempt to plead any claim under ERISA, and instead continued to assert an apparently state law claim for "WAGES DUE."[17] Such claim fails as a matter of law due to ERISA preemption.

### b.    Broussard never exhausted pension plan remedies.

Broussard never filed any claim with the pension plan administrator for additional pension pay, nor did he ever appeal a claim to the plan administrator – and thus, he wholly failed to exhaust his administrative/plan remedies as required by

---

[14] ROA.77, Rec. Doc. 14, FAC, ¶¶ 12-13.

[15] ROA.41-45, Rec. Doc. 7, Answer to Petition, ¶¶ 15-16; ROA.75-59, Answer to FAC, ¶¶ 20-21.

[16] *See* ROA.75-79, Rec. Doc. 14, FAC.

[17] ROA.75-79, Rec. Doc. 14, FAC, p. 2.

ERISA. Instead of complying with the administrative requirements, Broussard in late May 2022 (months after his resignation) mailed the ExxonMobil Benefits Service Center ("EMBSC") a three-page letter, addressing numerous topics, including allegedly "unfair performance assessments [and] being falsely accused of actions without evidence," an alleged "repeated failure" by ExxonMobil to accommodate his disabilities under the Americans with Disabilities Act ("ADA"),[18] the timing of his vacation payout following his termination, the valuation of his pension payout in a lump sum following termination, and the failure of ExxonMobil to schedule an exit interview with him. He concluded the letter by requesting an explanation of how the amount of his pension payout in a lump sum was calculated.[19]

Before he received a response to his letter, Broussard filed his Petition for Wages Due in state court on September 30, 2022.[20] On October 3, 2022, EMBSC sent a letter to Broussard titled as a "Benefit Calculation Statement," indicating it was responsive to his earlier letter, writing: "You have requested a detailed explanation of how your pension benefit was calculated. Please find your benefit calculation information below."[21] After explaining the calculation of his pension

---

[18] Broussard has not alleged any ADA claim; nor did he ever file any EEOC charge for alleged disability discrimination. *See* ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition; ROA.75-79, Rec. Doc. 14, FAC; ROA.220, MSJ Ex. C, Hayden Decl., ¶ 13.

[19] ROA.173-76, MSJ Ex. A, Broussard Depo. Ex. 10; ROA.167-69, MSJ Ex. A, Broussard Depo., 103:18-105:21.

[20] ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition.

[21] ROA.210-13, MSJ Ex. B, Villalba Decl., Ex. 2, Plaintiff's May 2022 Letter.

lump sum payout, the letter explained how Broussard could file a claim with EMBSC, advising:

> "If you do not agree with part or all of the calculation of your pension benefit as show [*sic*] in this Benefit Calculation Statement, you may file a claim with the ExxonMobil Benefits Service Center (EMBSC). Any claim should be in writing and should specifically describe the portion of the calculation with which you disagree. Claims should be sent to the following address.
>
> ExxonMobil Benefits Service Center<br>Attention: Claims<br>[Address]"[22]

The Summary Plan Description ("SPD") for the pension plan similarly explains the "Benefit claims procedures" for filing an initial claim and a subsequent appeal.[23] Under "Filing a claim," the SPD explains: "If you believe you are being denied a benefit, in whole or in part, to which you are entitled under the Pension Plan, you may file a claim for the benefit with the ExxonMobil Benefits Service Center (EMBSC) at Conduent. All claims must be filed in writing."[24] Pursuant to the claims process established by the Plan, the EMBSC will then review the claim and respond within a reasonable time not to exceed 180 days.[25] If the claim is denied, completely or partially, the plan participant will receive a written notice of the decision, which will describe: "The specific reasons for the denial and the provisions

---

[22] *Id.*
[23] ROA.198, MSJ Ex. B, Villalba Decl., Ex. 1, SPD.
[24] *Id.*
[25] *Id.*

upon which they are based;" "[a]ny additional information or material that is needed to validate the claim and the reason that information is required;" and "[t]he process for requesting an appeal."[26]

The SPD then explains the process for "Filing a <u>mandatory</u> appeal," writing: "If your claim has been denied, in whole or in part, you or your designated representative may appeal the decision to the Administrator-Benefits. <u>Such an appeal is required in order for you to preserve your right to bring a civil action in court, as described below</u>. **Your written appeal must be made within 60 days after you receive the initial notice of denial.** You should include the reasons why you believe the benefit should be paid and information that supports, or is relevant to, your request. You may also request reasonable access to, and copies of, information relevant to your claim. **<u>If you do not file the appeal within 60 days, your appeal will not be considered.</u>**"[27] Later in the section, the SPD reiterates that a plan participant "may bring a civil action in Federal Court under section 502(a) of ERISA," only "[a]fter you have received the response of the mandatory appeal."[28]

Broussard never filed any claim with EMBSC to challenge the calculation of his lump sum pension payout.[29] He had previously filed this lawsuit before receiving EMBSC's explanation of his pension benefits, and took no action to exhaust his

---

[26] *Id.*
[27] *Id.* (underlined emphasis added; bolded emphasis in original).
[28] *Id.*
[29] ROA.179, MSJ Ex. B, Villalba Decl., ¶ 6.

plan/administrative remedies before proceeding with a lawsuit. To the extent Broussard argues his May 2022 letter was a "claim" (which is denied), he failed to file the requisite "mandatory" appeal, which must be filed within 60 days of denial of a claim under the plan's available remedies. The record make clear that ExxonMobil's defense of failure to exhaust plan/administrative remedies is meritorious and necessitated dismissal of Broussard's pension-related claim on summary judgment.

### 4. The District Court properly dismissed Broussard's claim for additional shift differential pay.

Throughout his employment as a Security First Line Supervisor, Broussard was never represented by any union and therefore, he was not subject to any collective bargaining agreement.[30] There was no personal contract between Broussard and ExxonMobil providing for him to be paid any shift differential pay.[31]

In August 2021, a different Security Supervisor questioned whether Security First Line Supervisors should be paid shift differential pay.[32] At the Baton Rouge plants, First Line Supervisors in Operations were paid shift differential pay of $150/month, because their schedules shifted frequently between night to day shifts.[33]

---

[30] ROA.128, 160, MSJ Ex. A, Broussard Depo., 38:19-21, 80:14-19; ROA.220, MSJ Ex. C, Hayden Decl., ¶ 11.
[31] ROA.160, MSJ Ex. A, Broussard Depo., 80:20-22; ROA.220, MSJ Ex. C, Hayden Decl., ¶ 12.
[32] ROA.217-18, MSJ Ex. C, Hayden Decl., ¶ 4.
[33] *Id.*

Broussard's position, Security First Line Supervisor, was not considered an Operations position and therefore, had not previously been paid shift differential pay, and Security FLSs simply did not have shift schedules to the same extent as Operations positions did.[34]

Broussard testified he was "well aware that there was a difference between the way that they treated us [*i.e.*, in Security within the SSHE department] and others, and they got benefits that we did not have. I was well aware of that throughout my entire career, and when I say 'us' and 'others,' I'm talking about security versus operations."[35]

Broussard also testified he was not even aware of what, if anything, operations workers were paid for shift differential pay, in particular.[36] Local HR and management of the SSHE Division (i.e., the Division in which Security First Line Supervisors worked) conferred on the issue and determined there was no known precedent for paying *any* Security First Line Supervisors in Baton Rouge or in any

---

[34] *Id.*; ROA.130-32, Ex. A, Broussard Depo., 43:25-45:22 (testifying security worked two weeks of days and two weeks of nights while operations workers would "move from days to nights between your days off," such that security worked the two-week schedule "all in a row versus back and forth [like operations workers]").

[35] ROA.138-39, 141-42, 142-43, MSJ Ex. A, Broussard Depo., 58:22-59:8, 60:6-61:4 (testifying he "knew they received more benefits," and had heard "y'all get overtime at times, or, you know, that type of thing"), 61:17-62-16 (testifying, "We were the red-headed stepchildren" and "we knew there were other differences" and "our pay, our benefits did not align"), 62:20-63:4 (testifying "it was my understanding that it was not the same [pay/benefits] structure").

[36] ROA.139, 143-47, 161, 162-63, Ex. A, Broussard Depo., 59:12-19, 63:5-67:4 ("I never knew that there was a $150 a month shift differential…What I believed is that the shift supervisors in operations were paid better than or differently than the day supervisors."), 81:12-17 ("I don't know what they're offered."), 82:12-83:2.

other ExxonMobil sites within the same circuit (including ExxonMobil's Beaumont and Baytown sites) shift differential pay.[37] There also was no applicable contract requiring such pay for this position, which typically shifted less than Operations positions receiving this pay.[38] Nevertheless, in October 2021, a decision was made to begin paying Security First Line Supervisors shift differential pay of $150/month, with a retroactive payment made to January 1, 2021, which pay Broussard received.[39] Broussard and the other three Baton Rouge Security First Line Supervisors were advised of this decision by email, and Broussard responded this was "good news!"[40] Prior to this email, Broussard had never understood that he was "eligible or that was a part of what was supposed to be paid to me," and he could not recall having had any discussions with anyone about whether Security FLSs should receive any shift differential pay.[41] The email did not say Security FLSs should have been receiving shift differential pay earlier.[42] Broussard bases his claim for additional shift differential pay before 2021 *entirely* on an (alleged) conversation he had after this email with Tyler Wolfe, who he described as an employee who he

---

[37] ROA.218-19, MSJ Ex. C, Hayden Decl., ¶ 6.

[38] *Id.* at ¶ 5; ROA.130-32, MSJ Ex. A, Broussard Depo., 43:25-45:22.

[39] ROA.219, MSJ Ex. C, Hayden Decl., ¶ 8; ROA.137-38, MSJ Ex. A, Broussard Depo., 57:6-58:5.

[40] ROA.171, MSJ Ex. A, Broussard Depo. Ex. 5; ROA.164-65, MSJ Ex. A, Broussard Depo., 98:15-99:24.

[41] ROA.141, 147-50, 156, MSJ Ex. A, Broussard Depo., 61:5-13, 67:5-70:19, 76:5-9 ("I didn't know about it until he told us that we were going to be receiving it.").

[42] ROA.171, MSJ Ex. A, Broussard Depo. Ex. 5; ROA.151, MSJ A, Broussard Depo., 71:7-10.

understood had been "kind of floating around" when he transferred to Baton Rouge and that "they never really could figure exactly where he fell into [the chain of command for Security SSHE Department]."[43] In the (alleged) conversation, Wolfe said he had brought the issue to management's attention, who had agreed to make it effective as of January 2021.[44] Broussard has no recollection of ever discussing shift differential pay with anyone in Human Resources.[45] Though he felt "wronged" by not receiving this pay for a longer period, Broussard did nothing in response and "kept my mouth shut," not raising any complaint to HR, a corporate hotline, or management.[46] He has no knowledge of any source of an obligation to pay shift differential pay to Security FLSs before January 1, 2021, including no Collective Bargaining Agreement, no individual employment contract, and no policy or procedure.[47]

## B.    PROCEDURAL HISTORY

By judgment entered on September 13, 2024, the district court granted summary judgment to ExxonMobil.[48]

---

[43] ROA.133-34, 151-55, 156-57, MSJ Ex. A, Broussard Depo., 53:18-54:18, 71:11-75:11, 76:13-77:8.
[44] *Id.*
[45] ROA.157, MSJ Ex. A, Broussard Depo., 77:9-21.
[46] ROA.158-59, MSJ Ex. A, Broussard Depo., 78:1-79:7.
[47] ROA.160-61, MSJ Ex. A, Broussard Depo., 80:10-81:1.
[48] ROA.396, Judgment; *see also* ROA.382-95, Ruling and Order.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's judgment because:

(1) ERISA preempts Broussard's pension-related breach of contract claim;

(2) Even indulging Broussard's theory (entirely for the sake of argument), that a contract claim can survive ERISA preemption, there was no guaranteed payout amount for Broussard to "accept";

(3) Broussard failed to exhaust his administrative/plan remedies, as required by ERISA before filing suit for additional pension-related benefits;

(4) Broussard did not plead any ERISA claim;

(5) The district court did not err in not recognizing additional claims Broussard simply never pled; and

(6) There are no triable issues of material fact on Broussard's shift differential claim.

## ARGUMENT

### I.    ERISA Preempts Broussard's Pension-Related Breach of Contract Claim.

#### A.    Standard of Review.

An appellate court reviews *de novo* "'the question of whether a claim is preempted under ERISA.'" *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 290 (5th Cir. 2013) (quoting *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009)).

4917-5728-4366 v1

**B.     ERISA Preempts Breach of Contract Claims for Additional Pension Plan Benefits.**

Broussard's pension-related claims fail because they are preempted by ERISA. The Supreme Court has recognized that the "six carefully integrated civil enforcement provisions" under ERISA Section 502(a) offer "strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *MedARC, LLC v. Scott & White Health Plan*, 2022 WL 3044569, at *10 (N.D. Tex. Aug. 1, 2022) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). Consequently, ERISA completely preempts state-law causes of action that duplicate, supplement, or supplant ERISA's civil enforcement remedies. *Aetna Health*, 542 U.S. at 209.

While a participant or beneficiary of an ERISA-covered plan may sue under ERISA for benefits due under 29 U.S.C. § 1132(a)(1)(B), this is the exclusive cause of action for plan benefits. *Id.*; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987) (an ERISA claim is "the exclusive vehicle for actions by ERISA-plan participants"); 29 U.S.C. § 1132(a)(1)(B) (providing that a plan participant may bring a civil action under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"). As the Fifth Circuit has opined, when an individual "simply

wants what was supposed to have been distributed under the plan, the appropriate remedy is [an ERISA claim under Section 1132(a)(1)(B)]." *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 469 (5th Cir. 2018).

To expressly achieve this preemption, Section 514(a) of ERISA provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)); *see also, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (listing cases in which the Supreme Court has described ERISA preemption in broad terms).

It is undisputed ERISA governs Broussard's pension plan. But Broussard failed to ever plead a claim under ERISA. Neither his original Petition nor his First Amended Complaint made any mention to ERISA.[49] Instead, Broussard sued under the Louisiana Wage Payment Act, a state law, and then in response to ExxonMobil's summary judgment motion and in this appeal, advocated for a breach of contract claim, another state law claim.

---

[49] *See* ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition; ROA.75-79, FAC.

Under Fifth Circuit precedent, "to determine whether a state law relates to a plan for purposes of ERISA preemption, the court asks '(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 417 (5th Cir. 2008) (quoting *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)).

Broussard's (purported) breach of contract claim addresses an area of exclusive federal concern because it is based solely on an allegedly improper pension benefit distribution under an ERISA-covered pension plan. *See Aetna Health*, 542 U.S. at 211 (finding the plaintiffs' claims "related to" an ERISA-covered benefit plan where the only connection between the plaintiffs and the third-party administrator, CIGNA, was CIGNA's alleged mishandling of the plan). And, Broussard's claim "directly affect[s] the relationship among the traditional [ERISA] entities because it is 'dependent on, and derived from the rights of the plan beneficiaries" – here, Broussard – "to recover benefits under the terms of the plan." *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*, 164 F.3d 952, 954-55 (5th Cir. 1999) (finding preemption of plaintiff's claim of misrepresentation

of coverage because ERISA "preempts all state laws insofar as they relate to any employee benefit plan covered by the Act") (internal quotations omitted).

While Broussard argues his breach of contract claim should nevertheless survive because he allegedly accepted a pension payout "offer," as the district court appropriately observed, "Plaintiff's claim here arises entirely from his status as a beneficiary under Defendant's pension plan" and is, therefore, preempted by ERISA.[50] Courts within this Circuit consistently hold that "breach of contract claims based on [an] alleged failure to pay the full amount of benefits due under the terms of the [ERISA] policy are preempted." *Transitional Hosps. Corp.*, 164 F.3d at 955; *see also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290-91 (5th Cir. 1988) (affirming district court's dismissal on ERISA preemption grounds of hospital's state law breach of contract claims arising out of assignment of patient's rights under health care policy); *St. Luke's Episcopal Hosp. v. Louisiana Health & Serv. & Indem. Co.*, 2009 WL 47125, at *12 (S.D. Tex. Jan. 6, 2009) ("Because St. Luke's breach of contract theory is now premised on its contractual rights under the health insurance policy as an assignee, ERISA preempts the state-law breach of contract claim."). Whether labeled as a LWPA claim or a breach of contract claim, Broussard's claim is one for additional benefits allegedly owing under an ERISA-

---

[50] ROA.382-95, Ruling and Order, p. 8.

covered pension plan, and is, therefore, preempted by ERISA's complete preemption doctrine.[51]

Despite the clearly established principle of ERISA preemption, Broussard advocates for a breach of contract claim under Louisiana law to claim additional benefits under ExxonMobil's ERISA-covered pension plan.[52]

Broussard devotes several pages of his Brief to a discussion of *Aucoin v. Regions Financial Corp.*, 2014 WL 2527046 (E.D. La. June 4, 2014), beginning with an acknowledgment that it is "distinguishable from the present matter."[53] *Aucoin* involved the plaintiff's remaining claims under ERISA and for fraudulent inducement, after all earlier-asserted state law claims were dismissed on a Rule 12(b)(6) motion to dismiss, because "[t]he court found that all of Aucoin's state law claims against Regions and Renaissance, except his claim for fraud, were preempted

---

[51] Furthermore, the plan itself is the proper defendant, not the employer. 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpoena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan."); *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004) (The ERISA "claim for benefits…generally is limited to a suit against the plan, not an employer…or the claims evaluator…."); *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349-50 (5th Cir. 2003) (employer is proper defendant only where the Plan "has no meaningful existence separate from [the Plan]," such as where Plan benefits are "funded by the general assets of the partnership"). There is no evidence that ExxonMobil's pension plan is not indistinguishable from ExxonMobil or that ExxonMobil made any decision to deny benefits, such that ExxonMobil also would not be a proper defendant to any ERISA claim brought by Broussard.

[52] Appellant's Brief, Sec. IX(A), pp. 7-20 (*i.e.*, discussing Louisiana contract law and arguing, for example (at page 19), that "the present claim is based on a breach of promise by the Defendant which was predicated on the proper acceptance of the Plaintiff of an offer made by the Defendant prior to any attempt to revoke such offer" and that "[t]he present claim sounds in breach of a perfected agreement to pay wages due").

[53] Appellant's Brief, Section IX(A), pp. 13-15.

4917-5728-4366 v1

by ERISA." *Aucoin*, 2014 WL 2527046 at *2. The case does not support Broussard's maintenance of any claim for pension plan benefits under Louisiana law; instead, the case demonstrates the preemptive effect of ERISA, which preemptive effect supports the granting of ExxonMobil's motion for summary judgment on Broussard's state-law claims for additional pension benefits. The *Aucoin* opinion also addressed the need for an ERISA plaintiff to first exhaust his administrative remedies before asserting the exclusive claim under ERISA, which, as further discussed below, is a prerequisite to suit that Broussard has failed to satisfy. *Id.*

The excerpts of the *Aucoin* opinion related to Louisiana contract law that Broussard quotes and discusses at some length in his Brief were part of the court's discussion of his Section 1132(a)(1)(B) ERISA claim for additional plan benefits, not part of some breach of contract claim, as Broussard's briefing erroneously implies. The heading in the *Aucoin* opinion under which these excerpts are found makes clear the court was addressing "Aucoin's Section 1132(a)(1)(B) Claims." *Id.* at 4 (emphasis added). In addressing Aucoin's claim for a lump sum payout, the court noted that the Supreme Court has interpreted a Section 1132(a)(1)(B) ERISA claim "'narrowly, stating that it does not permit the recovery of extracontractual damages.'" *Id.* at *5 (quoting *Hamann v. Independence Blue Cross*, 543 Fed. Appx. 355, 357 (5th Cir. 2013) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 105 S.Ct. 3085, 3091 (1985))). The *Aucoin* court granted the defendants summary judgment on

Aucoin's ERISA claim because the subject retirement plan provided for benefits to be paid in installments, with no provision in the plan for a lump sum payment, and the evidence demonstrated the parties never entered into any valid contract to amend the retirement plan to allow for a lump sum payment to Aucoin.

Nothing in *Aucoin* supports allowing Broussard to maintain any Louisiana/state-law claim for additional pension plan benefits against ExxonMobil. If anything, the decision bolsters ExxonMobil's arguments for ERISA preemption and concerning Broussard's need to properly exhaust his administrative remedies before filing any ERISA claim. As the district court correctly acknowledged in its Ruling and Order, in *Aucoin*, "the court at summary judgment actually explained that it had previously 'found that all of [the plaintiff's] state law claims against [defendants], except his claim for fraud, were preempted by ERISA,' and dismissed those claims."[54] "In other words, in the very case Plaintiff cites in support of his argument, the court did exactly the opposite of what he seeks here."[55] Under the clearly established principle of ERISA preemption of state law claims, the Court should reject Broussard's argument that his claim for additional pension benefits "can be viewed as a contractual claim, neither governed by nor preempted by ERISA."[56]

---

[54] ROA.309 (bracketed alterations in original).
[55] *Id.*
[56] Appellant's Brief, Section IX(A), p. 20.

**C.**   **Even indulging Broussard's contract theory (entirely for the sake of argument), there was no guaranteed payout amount for Broussard to "accept."**

While no further analysis of Broussard's pension-related breach of contract claim is necessary given it must be dismissed due to ERISA preemption (and, as further discussed below, a failure to exhaust administrative remedies), Broussard's arguments that he accepted an "offer" for a specific pension payout are factually erroneous as well. There was no guaranteed payout amount set forth in Broussard's Exhibit 2 for Broussard to "accept" under Louisiana contract law, as Broussard falsely argues.[57] Broussard's Exhibit 2 contained several disclaimers, admonishing the reader there was no guaranteed payout amount stated within its four corners. The letter explicitly admonished the reader – in underlined and bolded text no less:

> Please keep in mind that your lump sum payment will vary as the three segment interest rates change. An increase in the interest rates will reduce your lump sum benefit; a decrease in the interest rates will result in a larger lump sum payment. Your final lump sum amount will be based on **the interest rates in effect at the time you commence your benefit.**[58]

The letter also provided further explanation of the three segment interest rates, explaining they are "important in determining your lump sum benefit because your lump sum represents the amount of money needed, as of your benefit

---

[57] ROA.276-77, Plaintiff's Ex. 2, EMBSC April 2022 Letter.
[58] *Id.* (original emphasis).

commencement date, to pay a stream of monthly payments to you over your lifetime," and specifically admonished that "[t]he 'Interest Rate used for Lump Sum Calculation' shown for each of the 3 segments reflect the phase-in assumptions in effect for the time period in which this calculation was produced <u>which may not be the same as the assumptions in effect at the time the benefit is commenced.</u>"[59] Even assuming *entirely for the sake of argument* that Broussard could pursue a state law contract claim for additional pension benefits (which ExxonMobil denies given ERISA's clearly established preemptive effect), there simply was no "irrevocable offer" from ExxonMobil for a lump sum payout in any specific amount that Broussard could accept, as Broussard erroneously argues for many pages of his Brief.[60] Broussard's quoting of cases involving state law claims for detrimental reliance[61] is also misplaced because (1) all state law claims are preempted by ERISA, and (2) he never pled any claim for detrimental reliance. Rather, he pled only a claim for "WAGES DUE" under the Louisiana Wage Payment Act (La. R.S. § 23:631).[62]

Because no genuine dispute of material fact exists as to whether Broussard's (purported) "breach of contract" claim (or LWPA claim) for additional pension

---

[59] *Id.* (emphasis added). Similarly, Broussard's Exhibit 1 (ROA.275), which is unauthenticated and therefore inadmissible hearsay, does not reflect any guaranteed payout, with the "+View All Assumptions" tab not opened to display the assumptions upon which the estimated amount was based.

[60] Appellant's Brief, Section IX(A), pp. 7-20.

[61] See Appellant's Brief, Section IX(A), p. 20 and n. 74-75.

[62] ROA.75-79, Rec. Doc. 14, FAC, p. 2.

benefits is preempted by ERISA, ExxonMobil is entitled to summary judgment as a matter of law on this claim. This Court should affirm the District Court's dismissal of Broussard's pension-related claim.

## II.    Broussard Failed to Exhaust His Administrative/Plan Remedies.

### A.    Standard of Review.

Whether failure to exhaust a plan's administrative claims procedures bars a claimant from suing in federal court:

- Is a matter for the district court's discretion.

- May be overturned on appeal only if the district court clearly abused its discretion.

*Cotillion v. United Refining Co.*, 781 F.3d 47, 53 (3d Cir. 2015) (collecting cases); *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 (3d Cir. 2002) ("When the District Court declines to grant an exception to the application of exhaustion principles, we review for abuse of discretion."); *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) ("We review a district court's decision to dismiss a complaint on exhaustion grounds for an abuse of discretion"); *Powell v. AT&T Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991) ("The rule in this court is clear: the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court and may be disturbed on appeal only when there has been a clear abuse of discretion.").

Broussard argues the applicable standard of review is instead the *de novo* review standard generally applicable to the granting of summary judgments.[63] However, the two cases Broussard cites in support of this argument did not involve any ERISA claims, or more specifically, the defense of a failure to exhaust plan/administrative remedies. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576 (5th Cir. 2020) (a Title VII case); *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 823 (5th Cir. 2019) (a Title VII and Age Discrimination in Employment Act case).

**B.    There is no basis to excuse Broussard's failure to exhaust plan remedies before filing suit**.

Even if Broussard's pension-related breach of contract claim were not preempted by ERISA, summary judgment is still proper because Broussard failed to exhaust his administrative remedies. Individuals asserting a claim under ERISA must first exhaust (that is, complete) a plan's administrative remedies before suing the plan in court. *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000) ("This court requires that claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits."); *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1300 (5th Cir. 1985). "The policies behind the exhaustion

---

[63] Appellant's Brief, Section IX(B), p. 21.

requirement include upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*." *Bourgeois*, 215 F.3d at 479 n.4; *Denton*, 765 F.2d at 1300 ("This is necessary to keep from turning every ERISA action, literally, into a federal case.").

ExxonMobil specifically pled the affirmative defense of Broussard's failure to exhaust his administrative/plan remedies. ROA.43, at ¶ 15. Broussard simply did not satisfy this condition precedent to filing suit. The ExxonMobil pension plan is governed by ERISA.[64] Broussard failed to file any claim with the plan administrator or any mandatory appeal of the denial of a claim, as clearly required by the plan. Broussard's irrefutable failure to exhaust his administrative remedies under the plan requires his claim for additional pension plan benefits be dismissed for failure to first exhaust plan/administrative remedies.

More specifically, Broussard failed to file a claim after the ExxonMobil Benefits Service Center ("EMBSC") sent him a letter[65] explaining the calculation of his pension lump sum payment and detailing how he could file a claim, and he failed

---

[64] ROA.182, MSJ Ex. B, Villalba Decl., Ex. 1, SPD ("This Plan is subject to the rules of the federal government, including Employee Retirement Income Security Act (ERISA)."); ROA.196-200, MSJ Ex. B, Villalba Decl., Ex. 1, SPD (Section titled: "Administrative and ERISA information").
[65] ROA.214-16, MSJ Ex. B, Villalba Decl., Ex. 3, EMBSC's October 2022 Letter.

to file the mandatory, administrative appeal required by the Plan's Summary Plan Description.[66] While Broussard argues the letter he sent in May 2022 requesting an explanation of his benefits calculation was a claim, it was not. The letter is expressly framed as a request for information, not a claim.[67] Furthermore, even assuming entirely for the sake of argument that Broussard's May 2022 letter was a claim, Broussard filed this lawsuit before receiving any denial of such "claim" or filing any administrative appeal of the denial of such "claim," as required under the plan's administrative remedy provisions.

Broussard provides <u>no citations to the record whatsoever</u> when he argues that he "did everything that he could to navigate through the administrative process" and that "ExxonMobil refused to fully cooperate with these efforts rendering Broussard's attempts futile."[68] The district court's finding that "Plaintiff makes no argument or showing whatsoever that attempting to satisfy the exhaustion requirements here would have been futile" was not an abuse of discretion.[69] Though Broussard argues that ExxonMobil "ignored"[70] his May 2022 letter requesting an explanation of his benefits, the record shows that on October 3, 2022, EMBSC sent a letter to Broussard titled as a "Benefit Calculation Statement," indicating it was responsive to his earlier

---

[66] ROA.198, MSJ Ex. B, Villalba Decl., Ex. 1, SPD.
[67] ROA.210-13, MSJ Ex. B, Villalba Decl., Ex. 2, Plaintiff's May 2022 Letter.
[68] Appellant's Brief, Section IX(B), pp. 24-25.
[69] ROA.392, Ruling and Order.
[70] Appellant's Brief, Section IX(B), p. 25.

letter, writing: "You have requested a detailed explanation of how your pension benefit was calculated. Please find your benefit calculation information below."[71] And, after explaining the calculation of his pension lump sum payout, the October 2022 letter further explained to Broussard how he could file a claim with EMBSC.[72] He simply chose not to do so.

While Broussard appears to suggest he should be excused from the exhaustion requirement because he has Dyslexia and ADHD, Broussard had legal counsel in May 2022 – who wrote to ExxonMobil concerning his claims for unpaid vacation (not involved in this appeal, as again, those claims were previously settled by the parties) and additional shift differential pay[73] – *before* Broussard even began writing EMBSC related to his pension plan payout in late May 2022. If Broussard had difficulties understanding the materials related to ExxonMobil's pension plan (including materials available online), he could consult with his legal counsel who ultimately filed this case whom he had retained as early as May 2022.

---

[71] ROA.214-16, MSJ Ex. B, Villalba Decl., Ex. 3, EMBSC October 2022 Letter.

[72] *Id.*

[73] ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition, ¶ 9 ("On or about May 17, 2022, Petitioner, through undersigned counsel, made a written demand for payment of earned wages via certified mail which was delivered on May 18, 2022.") (emphasis added); ROA.17-21, Rec. Doc. 1-1, Plaintiff's Memorandum in Support of Rule to Show Cause, p. 2 (same); ROA.75-79, Rec. Doc. 14, FAC, ¶ 14 ("On or about May 17, 2022, Petitioner, through undersigned counsel, made a written demand for payment of earned wages via certified mail.") (emphasis added).

The district court did not abuse its discretion in ruling that "even if Plaintiff's claims were not preempted by ERISA, he has failed to satisfy the available administrative remedies," warranting summary judgment in favor of ExxonMobil.[74]

## III.  Broussard Did Not Plead Any ERISA Claim.

### A.  Standard of Review.

Whether a complaint sufficiently states a claim is reviewed *de novo* on appeal. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173 (5th Cir. 2006).

### B.  Broussard never pled any ERISA claim, and moreover, his failure to exhaust his administrative remedies would bar such a claim.

Broussard's continued advocacy for the recognition of a "breach of contract" claim for additional pension benefits underscores the fact he never pled any ERISA claim. Broussard's original and amended Complaints, instead, asserted claims under the Louisiana Wage Payment Act for "WAGES DUE," and he never challenged his pension payment under ERISA.[75] His First Amended Complaint does not mention ERISA.[76] Instead, he asserted only a state law claim (under the LWPA) and then argued in opposition to ExxonMobil's motion for summary judgment that his "claim sounds in breach of a perfected agreement to pay wages due."[77]

---

[74] ROA.392, Ruling and Order.
[75] *See* ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition; ROA.75-79, Rec. Doc. 14, FAC.
[76] ROA.75-79.
[77] ROA.243.

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint "'give the defendant fair notice of <u>what the…claim is</u> and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (emphasis added). Here, Broussard's original Petition and First Amended Complaint both spoke of his claims as ones under the LWPA for additional "WAGES DUE."[78] Then, in response to ExxonMobil's motion for summary judgment, Broussard argued his claim for additional pension benefits is a claim that "sounds in breach of a perfected agreement to pay wages due," *i.e.*, was one for common law breach of contract.[79] Now, he wants to switch up the identity of his claim as if it were one pled under ERISA, without ever mentioning the ERISA statute in either of his complaints.

In any event, even assuming *entirely for the sake of argument* that Broussard's First Amended Complaint can be read as including a claim under ERISA (which ExxonMobil denies), any ERISA claim is barred by Broussard's failure to exhaust his plan/administrative remedies before filing suit, as established above.

---

[78] ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition; ROA.75-79, Rec. Doc. 14, FAC, p. 2.
[79] ROA.243.

**IV.    The District Court did Not Error in Not Recognizing Additional Claims Broussard Simply Never Pled.**

**A.    Standard of Review.**

Whether a complaint sufficiently states a claim is reviewed *de novo* on appeal. *See Carroll*, 470 F.3d at 1173.

**B.    Broussard did not plead any claim for waiting time penalties under ERISA or any other ERISA-based claims.**

In his fourth point of alleged error, Broussard laundry lists some possible claims under ERISA. Despite not referencing ERISA, much less any (alleged) delay in obtaining copies of pension plan documents, in either his original Petition or First Amended Complaint, Broussard argues that the district court committed reversible error in not recognizing additional actions he possibly could have alleged under ERISA, including a supposed claim for waiting time penalties that ERISA provides for delays in an Administrator's provision of plan documents.[80] He also obtusely references the right to file suit if the "Pension Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights" – even though his original Petition and First Amended Complaint make no mentions whatsoever of any alleged misuse of plan money or alleged discrimination against him for asserting pension rights.[81] He argues these previously unasserted claims should be recognized

---

[80] Appellant's Brief, Section IX(D), pp. 32-33.
[81] Appellant's Brief, Section IX(D), p. 33.

by this Court in the "inherent interests of substantial justice," without citing *any* legal authorities for an appellate court to allow a post-Judgment expansion of a plaintiff's complaint to assert heretofore wholly unasserted claims.[82] He also again references his Dyslexia and ADHD diagnoses, as if those conditions can somehow excuse his, and his legal counsel's, failure to plead unasserted claims.[83]  Broussard had legal counsel no later than May 2022[84] – *before* Broussard even began writing EMBSC related to his pension plan payout in late May 2022 and before he filed his original Petition and First Amended Complaint. The district court did not error in failing to recognize legal claims that are absent from Broussard's First Amended Complaint.

## V.    There are No Triable Issues of Material Fact on Broussard's Shift Differential Claim.

### A.    Standard of Review.

Broussard's final remaining claim is under the LWPA for retroactive payment of the $150/month shift differential that he began to receive in 2021. The Fifth Circuit reviews the district court's grant of summary judgment *de novo*, applying the same standard as the district court, meaning it "[will] affirm if 'there is

---

[82] Appellant's Brief, Section IX(D), pp. 36-37.

[83] Appellant's Brief, Section IX(D), p. 37.

[84] ROA.12-15, Rec. Doc. 1-1, Ex. A, Petition, ¶ 9 ("On or about May 17, 2022, Petitioner, through undersigned counsel, made a written demand for payment of earned wages via certified mail which was delivered on May 18, 2022.") (emphasis added); ROA.17-21, Rec. Doc. 1-1, Plaintiff's Memorandum in Support of Rule to Show Cause, p. 2 (same); ROA.75-79, Rec. Doc. 14, FAC, ¶ 14 ("On or about May 17, 2022, Petitioner, through undersigned counsel, made a written demand for payment of earned wages via certified mail.") (emphasis added).

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 823-24 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a) and citing *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020)). "To survive a motion for summary judgment, the nonmovant must come forward with specific facts showing that there is a genuine issue of material fact." *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 362-63 (5th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "'[T]he nonmovant can[not] defeat summary judgment with conclusory allegations, unsupported assertions, or only a scintilla of evidence.'" *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1140 (Fed. Cir. 2021) (citing *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020)). "[S]ummary judgment [is] appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'" *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"A full trial on the merits is only warranted when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021). Where, as in this case, "the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial,'" and the Court must affirm summary judgment. *Matsushita*, 475 U.S. at 587.

## B. Broussard Had No Legal Right to Shift Differential Before January 1, 2021.

There is no dispute Broussard was paid a shift differential for his work after January 1, 2021.[85] However, in this lawsuit, he contends he should have been paid a shift differential for earlier work. This claim fails because there is no evidence he had any legal right to such pay before it was adopted by local HR and SSHE managers for Security First Line Supervisors to begin January 1, 2021.

The LWPA "requires that Plaintiffs prove they were owed wages under a 'term of employment.'" *Bennett v. McDermott Internat'l, Inc.*, 855 Fed. Appx. 932, 939 (5th Cir. 2021); La. R.S. § 23:631(A)(1)(a). Where there is no express agreement for a particular form of pay and no internal policy or practice that mandates such compensation be paid to the plaintiff, such pay was not a "term of employment." *Id.* at 939-40 (affirming dismissal of claim for additional pay for commute time, without leave to amend which would be "futile," because there was "no relevant 'term of employment," with plaintiffs merely arguing they "should" have been paid this additional pay); *Montgomery v. Waitr Holdings Inc.*, 2019 WL

---

[85] Broussard was fully paid shift differential pay once this pay was adopted for Security First Line Supervisors at a rate of $75 per semi-monthly payroll and including retroactively to January 1, 2021. ROA.219, MSJ Ex. C, Hayden Decl., ¶ 9.

2233792, *2 (E.D. La. May 23, 2019) (dismissing claim that employer should have paid more than the promised and paid wages as "not cognizable under the LWPA"); *Stoll v. Goodnight Corp.*, 469 So.2d 1072, 1075 (La. Ct. App. 1985) (the LWPA "does not contemplate as a wage dispute…where the amount claimed may not be due under the terms of employment").

While an employment contract need not be in writing, "there must be both offer and acceptance and a meeting of the minds." *Hampton v. McDermott Internat'l, Inc.*, 2019 WL 5617025, *2 (W.D. La. Oct. 30, 2019); *Kerek v. Crawford Electric Supply Co.*, 2020 WL 4906050, at *6 (M.D. La. Aug. 20, 2020). In *Hampton*, the court dismissed a LWPA claim for additional pay because the plaintiffs had "not alleged that there was an agreement or understanding of any sort that Plaintiffs would be compensated for any time spent on the transport van or any pre-shift work that they may have been performed [*sic*] upon their arrival at the worksite prior to their scheduled shift." *Hampton*, 2019 WL 5617025, at *3. The LWPA "is directed only at the payment, upon termination, of 'agreed-upon' compensation." *Whitworth v. Chiles Offshore Corp.*, 1992 WL 245618, *1 (E.D. La. Sept. 17, 1992); *Kerek*, 2020 WL 4906050, at *5 (quoting *Whitworth* and interpreting undisputed bonus plan).

Here, Broussard had no employment contract for the payment. He had no collective bargaining agreement for the payment. He had no employment policy or

agreement or "meeting of the minds" for the payment prior to January 1, 2021. Broussard's claim for earlier shift preferential fails because the mere fact that ExxonMobil began paying Broussard shift differential pay in 2021 does not, alone, establish that he was owed such pay earlier. *Hampton*, 2019 WL 5617025, at \*3; *Whitworth*, 1992 WL 245618, at \*1. The LWPA is "directed only at payment, upon termination, of 'agreed-upon' compensation." *Kerek*, 2020 WL 4906050, at \*5. And again, the Act requires that a plaintiff prove that he was owed wages under a "'term of employment.'" *Bennett*, 855 Fed. Appx. at 939 (5th Cir. 2021); La. R.S. § 23:631(A)(1)(a). Broussard has put forward no evidence that he had an agreement with ExxonMobil, prior to 2021, under which he was owed shift differential pay.

As the district court correctly observed, in response to ExxonMobil's motion for summary judgment, Broussard merely "assume[d] his eligibility for shift differential pay prior to 2021 but does not attempt to explain the basis for this assumption," and contested only whether his claim was prescribed by the 3-year prescription period set forth in La. Civ. Code art. 3494,[86] which is not an issue presented for appeal.[87] His appellate brief again argues only against application of the standard 3-year prescription period, without providing any proof of any

---

[86] ROA.393-94, Ruling and Order.

[87] Appellant's Brief, Section VI, p. 3 (articulating the issue on appeal vis-à-vis his claim for shift differential pay as: "Did the district err when it did not recognize that shift differential compensation was still owed?") & Section IX(E) ("The district court erred when it did not recognize that shift differential compensation was still owed.") (bolded emphasis omitted).

agreement for shift differential pay before 2021.[88] No analysis of the prescription period's effect on Broussard's claim for shift differential pay is needed given his wholesale failure to demonstrate any triable issues of fact on whether such pay was due before 2021.[89] While ExxonMobil had raised as an alternative ground for summary judgment of Broussard's claim for shift differential pay, the three-year prescription period applicable to wage claims, limiting Broussard's recovery window to the period beginning September 30, 2019, an analysis of the prescriptive period on appeal is unnecessary given the claim cannot survive on its merits. Broussard, however, focuses exclusively on his argument that the common law doctrine of *contra non valentem* should be applied to except him from three-year prescription. The undisputed facts do not support the application of this doctrine based on Broussard's own testimony that he was "well aware" of differences in the pay of Security FLSs and other job classifications throughout his employment – and thus, he should have sued earlier if he felt there was any legal justification for demanding the same pay as other job classifications.[90]

---

[88] *See* Appellant's Brief, Section IX(E)(2), pp. 26-45.

[89] As the district court observed, "[b]ecause the Court finds that Plaintiff has no claim under the LWPA, the Court need not address the parties' arguments regarding whether Plaintiff's claim has prescribed." ROA.394, Ruling and Order.

[90] ROA.138-39, 140-41, 141-42, 142-143, MSJ Ex. A, Broussard Depo., 58:22-59:8 (testifying he was "well aware that there was a difference between the way that they treated us [*i.e.*, in Security within the SSHE department] and others, and they got benefits that we did not have. I was well aware of that throughout my entire career, and when I say 'us' and 'others,' I'm talking about security versus operations"), 60:6-61:4 (testifying he "knew they received more benefits," and had heard "y'all get overtime at times, or, you know, that type of thing"), 61:17-62:16 (testifying, "We were the red-headed stepchildren" and "we knew there were other differences" and "our pay, our

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, this Court should affirm the District Court's grant of summary judgment for ExxonMobil.

DATED: January 10, 2025          BY: */s/ Scott D. Huffstetler*
                                           Scott D. Huffstetler (Bar Roll #28615)
                                           scott.huffstetler@keanmiller.com
                                           Erin Lutkewitte Kilgore (Bar Roll #31244)
                                           erin.kilgore@keanmiller.com
                                           KEAN MILLER LLP
                                           400 Convention Street, Suite 700
                                           Baton Rouge, Louisiana  70802
                                           Telephone: (225) 387-0999

                                         *Attorneys for Exxon Mobil Corporation*

---

benefits did not align"), 62:20-63:4 (testifying "it was my understanding that it was not the same [pay/benefits]structure").

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.1, the brief contains 9,226 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 (Version 2402 Build 17328.20670) 64-bit in 14-point Times New Roman font.


DATED: January 10, 2025      BY: */s/ Scott D. Huffstetler*
                               Scott D. Huffstetler (Bar Roll #28615)
                               scott.huffstetler@keanmiller.com
                               Erin Lutkewitte Kilgore (Bar Roll #31244)
                               erin.kilgore@keanmiller.com
                               KEAN MILLER LLP
                               400 Convention Street, Suite 700
                               Baton Rouge, Louisiana  70802
                               Telephone: (225) 387-0999

                               *Attorneys for Exxon Mobil Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on January 10, 2025, which will serve a copy to all counsel of record by notice of electronic filing.

DATED: January 10, 2025  BY: */s/ Scott D. Huffstetler*
        Scott D. Huffstetler (Bar Roll #28615)
        scott.huffstetler@keanmiller.com
        Erin Lutkewitte Kilgore (Bar Roll #31244)
        erin.kilgore@keanmiller.com
        KEAN MILLER LLP
        400 Convention Street, Suite 700
        Baton Rouge, Louisiana  70802
        Telephone: (225) 387-0999

        *Attorneys for Exxon Mobil Corporation*